*United States v. Davis*

# United States Court of Appeals
## for the Second Circuit

———————————

AUGUST TERM, 2019

(Argued: March 20, 2020      Decided: June 5, 2020)

Docket No. 19-874

———————————

UNITED STATES OF AMERICA,

*Appellant,*

—v.—

MATTHEW F. JOHNSON, BARRETT B. JOHNSON, SHAWN S. JOHNSON, COREY J. RIVERS, RAHEIM HOWELL, JENNIFER M. GOURLEY, ANDREA PERKINS, KEVIN L. GLOWACKI, RICHARD D. FARNHAM, SR., JOHN A. LEE, MARK L. BURDICK, DAVID J. THOMPSON, LEROY W. NUPP, JR., MARK W. DECKER, ANNA M. BENJAMIN, SCOTT PETERS, JIMI LIN GOURLEY, RYAN V. POTTER, LORI A. CARROW, BETH L. SAIFAKAS,

*Defendants,*

MONAE DAVIS,

*Defendant-Appellee.*

———————————

B e f o r e :

KATZMANN, *Chief Judge*, WESLEY and BIANCO, *Circuit Judges.*

———————————

The government appeals from an order and amended judgment of the United States District Court for the Western District of New York (Skretny, *J.*) granting Monae Davis's motion for a reduced sentence under Section 404 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. Davis was sentenced in August 2009 after pleading guilty to one count of conspiracy to possess with intent to distribute and to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), 846. The government argues that eligibility for Section 404 relief turns on a defendant's actual conduct and that Davis is therefore ineligible because he conceded in his plea agreement that his relevant conduct involved at least 1.5 kilograms of crack cocaine. We hold, however, that Section 404 eligibility depends on the statutory offense for which a defendant was sentenced, not the particulars of any given defendant's underlying conduct. Because Section 2 of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372, modified the statutory penalties for the offense for which Davis was sentenced, Davis was eligible for Section 404 relief. The district court's order and amended judgment are therefore AFFIRMED.

———————————

DANIEL J. KANE, Attorney, Appellate Section (Matthew S. Miner, Deputy Assistant Attorney General, and Brian A. Benczkowski, Assistant Attorney General, *on the brief*), Criminal Division, United States Department of Justice, Washington, DC; Tiffany H. Lee, Assistant United States Attorney, Joseph M. Guerra, III, First Assistant United States Attorney, James P. Kennedy, Jr., United States Attorney for the Western District of New York, Buffalo, NY, *for Appellant United States of America*.

MARYBETH COVERT, Assistant Federal Public Defender, Federal Public Defender's Office, Western District of New York, Buffalo, NY, *for Defendant-Appellee Monae Davis*.

———————————

KATZMANN, *Chief Judge*:

This case requires us to interpret Congress's latest effort to address the longstanding disparity in federal statutory penalties for crack and powder cocaine offenses. Monae Davis was convicted after pleading guilty to one count of conspiracy to possess with intent to distribute and to distribute "50 grams or more" of crack cocaine. In his plea agreement, Davis conceded that his "relevant conduct" involved at least 1.5 kilograms of crack cocaine, but this larger quantity was not reflected in either his indictment or judgment of conviction. At the time, given Davis's prior drug felony conviction, a conspiracy conviction involving 50 grams or more of crack cocaine mandated a statutory penalty range of 20 years to life in prison. Accordingly, on August 26, 2009, the district court sentenced Davis to the minimum of 20 years, to be followed by 10 years of supervised release.

One year later, President Obama signed into law the Fair Sentencing Act of 2010. As relevant here, Section 2 of the Fair Sentencing Act increased from 50 to 280 grams the amount of crack cocaine necessary to trigger the statutory penalty range that had applied to Davis. But the Fair Sentencing Act was not retroactive to defendants who, like Davis, had been sentenced before its passage. That situation persisted until, several years later, President Trump signed into law the

3

First Step Act of 2018. Section 404 of the First Step Act authorizes district courts to reduce sentences they previously imposed for a "covered offense," which the statute defines as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act . . . , that was committed before August 3, 2010."

Davis moved for a sentence reduction pursuant to Section 404, but the government opposed his motion. The government argued that Davis was ineligible for Section 404 relief because his relevant conduct involved at least 1.5 kilograms of crack cocaine, a quantity that would have triggered the same penalty range both before and after the passage of the Fair Sentencing Act. According to the government, that meant that Davis had not originally been sentenced for a "covered offense" within the meaning of Section 404. The district court rejected that argument, concluding that "it is the statute of conviction, not actual conduct, that controls eligibility under the First Step Act." *United States v. Davis*, 423 F. Supp. 3d 13, 16 (W.D.N.Y. 2019). Exercising its discretion, the district court then reduced Davis's sentence to time served and eight years' supervised release. *Id.* at 17–18.

On appeal, the sole question before us is whether Davis was originally sentenced for a "covered offense" and is therefore eligible for relief under Section 404 of the First Step Act. For the reasons that follow, we conclude that he was. The definitional language "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 . . . of the Fair Sentencing Act" conditions eligibility on a defendant's statute of conviction, not the defendant's "actual" conduct. Because the district court imposed a sentence for Davis's violation of, *inter alia*, 21 U.S.C. § 841(b)(1)(A)(iii), and because Section 2 of the Fair Sentencing Act changed the penalties associated with that statute, we conclude that Davis was sentenced for a "covered offense" and is therefore eligible for discretionary relief under Section 404 of the First Step Act.

## BACKGROUND

In May 2009, Monae Davis pleaded guilty to one count of a grand jury indictment charging him with conspiring to violate the federal drug laws by possessing with intent to distribute and distributing crack cocaine. In doing so, Davis admitted to each element of the charged offense, including that "at least 50 grams" of crack cocaine "was reasonably foreseeable to [him] as being within the scope of the [conspiracy]." App'x 74–75. Apart from admitting to each element of

5

the charged offense, Davis also admitted "for the limited purpose of complying with Rule 11(b)(3)" of the Federal Rules of Criminal Procedure that "the amount involved in [his] relevant conduct" was "[a]t least 1.5 kilograms but less than 4.5 kilograms." *Id.* at 75.[1]

The district court accepted Davis's plea. Because a conspiracy to violate the federal drug laws triggers the "same penalties as those prescribed for the offense, the commission of which was the object of the . . . conspiracy," 21 U.S.C. § 846, Davis's conviction subjected him to the statutory penalties set forth in 21 U.S.C. § 841(b)(1)(A), which mandated a minimum sentence of 10 years' imprisonment and a maximum of life imprisonment for any person who "manufacture[s], distribute[s], . . . or possess[es] with intent to . . . distribute . . . 50 grams or more" of crack cocaine, 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii) (2006). In Davis's case,

---

[1] Rule 11(b)(3) provides that "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). As we have explained, compliance with that Rule "does not require that the court be satisfied that a jury would return a verdict of guilty or that the court weigh evidence to assess whether it is even more likely than not that the defendant is guilty. Instead, [it] requires the court to assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty," such that, "were a jury to accept as fact [those] statements . . . , a guilty verdict would follow." *United States v. Albarran*, 943 F.3d 106, 121 (2d Cir. 2019). Unless otherwise indicated, in quoting cases, we omit all citations, footnotes, emphases, alterations, and internal quotation marks.

subsection (b)(1)(A) mandated an even higher penalty — 20 years to life — because Davis had a prior drug felony conviction. *Id.* § 841(b)(1)(A) (2006).

On August 26, 2009, the district court sentenced Davis to 20 years of imprisonment and 10 years of supervised release. In doing so, the district court described its chosen sentence as "[t]he best that I can do . . . out of respect and consideration for everything else that I know about in this particular case about [Davis]." App'x 120. Davis appealed the sentence, and we affirmed. *United States v. Johnson*, 425 F. App'x 66 (2d Cir. 2011) (summary order); *see also Davis v. United States*, 643 F. App'x 19 (2d Cir. 2016) (summary order).

A year after Davis was sentenced, President Obama signed into law the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372. The Fair Sentencing Act marked the culmination of a decades-long effort to address what had been a 100-to-1 disparity between the amounts of crack and powder cocaine required to trigger the mandatory statutory penalties in 21 U.S.C. § 841(b)(1). *See Dorsey v. United States*, 567 U.S. 260, 266–70 (2012). As relevant here, Section 2 of the Fair Sentencing Act increased the threshold quantities of crack cocaine required to trigger each of Section 841(b)(1)'s mandatory statutory penalty ranges. *See* Fair Sentencing Act § 2(a), 124 Stat. at 2372. That provision's effect is

illustrated here by excerpting the relevant portions of 21 U.S.C. § 841 as they existed at the time of Davis's offense, with the Fair Sentencing Act's modifications overlaid:

> (a) Unlawful acts
>
> Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally —
>
>> (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or
>>
>> (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.
>
> (b) Penalties
>
> Except as otherwise provided in section 849, 859, 860, or 861 of this title, any person who violates subsection (a) of this section shall be sentenced as follows:
>
> (1)(A) In the case of a violation of subsection (a) of this section involving —
>
> . . . .
>
>> (iii) ~~50~~ **280** grams or more of a mixture or substance . . . which contains cocaine base;
>
> . . . .
>
> such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life . . . . If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment . . . .

21 U.S.C. § 841 (2006), as modified by Fair Sentencing Act § 2(a)(1), 124 Stat. at 2372.[2] Those revisions were not retroactive, however, for defendants like Davis who were sentenced before the Act's passage on August 3, 2010. *See Dorsey*, 567 U.S. at 273.

On December 21, 2018, President Trump signed into law the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. This appeal turns on Section 404 of the First Step Act, which addressed the retroactive application of the Fair Sentencing Act's reforms. Section 404 provides as follows:

SEC. 404. APPLICATION OF FAIR SENTENCING ACT.

(a) DEFINITION OF COVERED OFFENSE. — In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was committed before August 3, 2010.

(b) DEFENDANTS PREVIOUSLY SENTENCED. — A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2

---

[2]     Section 2 of the Act similarly increased from 5 to 28 grams the quantity of crack cocaine needed to trigger 21 U.S.C. § 841(b)(1)(B)'s sentencing range of 5 to 40 years. *See* Fair Sentencing Act § 2(a)(2), 124 Stat. at 2372 (codified at 21 U.S.C. § 841(b)(1)(B)(iii)). Section 3 of the Act struck from the statute prohibiting simple possession of controlled substances the heightened mandatory penalty ranges associated with certain threshold quantities of crack cocaine. *See* Fair Sentencing Act § 3, 124 Stat. at 2372 (codified at 21 U.S.C. § 844(a)).

and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed.

> (c) LIMITATIONS. — No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 . . . or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

First Step Act § 404, 132 Stat. at 5222. Section 404 authorizes district courts to make a discretionary decision about whether and how to reduce a defendant's sentence, but only if the defendant was sentenced for a "covered offense." Section 404(b) thus conditions "eligibility — that is, when a court may entertain a motion for relief under [Section 404] — on whether a sentence was imposed 'for a covered offense'" within the meaning of Section 404(a). *United States v. Holloway*, 956 F.3d 660, 664 (2d Cir. 2020).

On February 1, 2019, Davis filed a motion for a reduced sentence under Section 404. The government opposed the motion, arguing that "[g]iven [Davis's] actual conduct" — namely, the 1.5 kilograms that Davis admitted as relevant conduct in his plea agreement — "the penalties for his offense of conviction were not modified by the Fair Sentencing Act and he is, therefore, ineligible for relief."

10

App'x 144. The government further argued that "it cannot be disputed that, if the Fair Sentencing Act was in effect at the time [Davis] committed his crime, the indictment would have alleged '280 grams or more of cocaine base' to trigger the penalties of § 841(b)(1)(A). This is especially so given that [Davis's] conduct involved more than five times the necessary 280 grams." *Id.* at 143.

The district court granted Davis's motion on March 6, 2019. *See Davis*, 423 F. Supp. 3d 13. As relevant here, the district court held that "it is the statute of conviction, not actual conduct, that controls eligibility under the First Step Act." *Id.* at 16. Because Davis was convicted for a violation of "21 U.S.C. § 846 as it relates to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 851," in the district court's words, and because "[t]he penalties associated with these statutes were modified (reduced) by section 2 or 3 of the Fair Sentencing Act," the district court concluded that Davis had been sentenced for a "covered offense" within the meaning of the First Step Act and was therefore eligible for relief. *Id.* at 17.

The district court then exercised its discretion under Section 404 and reduced Davis's sentence of imprisonment to time served and his term of supervised release to eight years. *Id.* at 17–18. The district court entered an order accordingly on March 7, 2019, and the Bureau of Prisons released Davis the same

day. Davis then served a brief term of imprisonment for a New York State offense before being released on state parole on May 14, 2019.

The government timely appealed.

## DISCUSSION

Davis was convicted after pleading guilty to an indictment count that charged him with a conspiracy to possess with intent to distribute and to distribute "50 grams or more" of crack cocaine, a statutory offense described by the interaction of Sections 846, 841(a)(1), and 841(b)(1)(A)(iii) of Title 21 of the United States Code. Among the elements of that offense, to which Davis specifically admitted, was Section 841(b)(1)(A)(iii)'s quantity threshold, then "50 grams or more." In addition, outside the context of admitting to each of the elements of the offense to which he was pleading guilty, Davis admitted that his "relevant conduct" included at least 1.5 kilograms of crack cocaine.

Davis was eligible for a sentence reduction under Section 404 of the First Step Act only if he was sentenced for a "covered offense," First Step Act § 404(b), 132 Stat. at 5222, where "the term 'covered offense' means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was committed before August 3, 2010," *id.* § 404(a). We must therefore decide whether Davis was sentenced for a

12

"covered offense" notwithstanding his admission to conduct that would have triggered the same penalty range under Section 841(b)(1)(A)(iii) of Title 21 even after Section 2 of the Fair Sentencing Act increased that provision's quantity threshold from 50 to 280 grams. We review that question of statutory interpretation *de novo*. *See United States v. Williams*, 551 F.3d 182, 185 (2d Cir. 2009).

Several of our sister circuits have recently confronted the meaning of "covered offense" in precedential opinions. *See United States v. Boulding*, No. 1706, 2020 WL 2832110 (6th Cir. June 1, 2020); *United States v. Shaw*, 957 F.3d 734 (7th Cir. 2020); *United States v. Smith*, 954 F.3d 446 (1st Cir. 2020); *United States v. Jackson*, 945 F.3d 315 (5th Cir. 2019), *cert. denied*, No. 19-8036, 2020 WL 1906710 (U.S. Apr. 20, 2020); *United States v. McDonald*, 944 F.3d 769 (8th Cir. 2019); *United States v. Wirsing*, 943 F.3d 175 (4th Cir. 2019), *as amended* (Nov. 21, 2019). In one way or another, each has concluded that it is the statute under which a defendant was convicted, not the defendant's actual conduct, that determines whether a defendant was sentenced for a "covered offense" within the meaning of Section 404(a). *See Boulding*, 2020 WL 2832110, at *6; *Shaw*, 957 F.3d at 738–39; *Smith*, 954

13

F.3d at 448–49; *Jackson*, 945 F.3d at 320; *McDonald*, 944 F.3d at 772; *Wirsing*, 943 F.3d at 185–86.[3] For the reasons explained below, we agree.

We begin, as we always do, with the language of the statute, "giving the statutory terms their ordinary or natural meaning." *United States v. Lockhart*, 749 F.3d 148, 152 (2d Cir. 2014). When that meaning is not clear, we make use of "a variety of interpretive tools, including canons, statutory structure, and legislative history." *Id.*

Section 404(a) defines the term "covered offense" to mean "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act . . . , that was committed before August 3, 2010." First Step Act § 404(a), 132 Stat. at 5222. In arguing for their differing interpretations of Section 404, the parties chiefly dispute whether the term "Federal criminal statute" or the complete phrase "violation of a Federal criminal statute" is the antecedent of the limiting clause that follows, "the statutory

---

[3]      In a non-precedential unpublished opinion, the Eleventh Circuit appeared to depart from this trend by affirming the denial of a defendant's First Step Act motion on the theory that "changes to the triggering quantities of [crack] cocaine for the imposition of the mandatory sentencing scheme under § 841 [did] not impact [the defendant's] sentence because he was attributed with over five kilograms of [crack] cocaine, far in excess of the new 280-gram triggering amount." *United States v. Means*, 787 F. App'x 999, 1001 (11th Cir. 2019) (per curiam).

penalties for which were modified by section 2 or 3 of the Fair Sentencing Act."

In other words, the parties ask us to decide whether Section 404(a) is better read to confer eligibility where the Fair Sentencing Act "modified" the "statutory penalties" for a "Federal criminal statute," or instead where it "modified" the "statutory penalties" for a "violation of a Federal criminal statute."

Davis urges the former view, that "Federal criminal statute" is the proper antecedent. And, he argues, that means that a court should look only to whether the Fair Sentencing Act modified the statutory penalties associated with a defendant's statute of conviction in determining whether the defendant was sentenced for a "covered offense" within the meaning of Section 404(a) — regardless of the defendant's actual conduct. According to the government, by contrast, the full phrase "violation of a Federal criminal statute" is the correct antecedent, and we must therefore conclude from the word "violation" that a defendant's actual conduct determines whether the defendant was sentenced for a "covered offense."

Davis argues that an interpretive canon known as the "nearest reasonable referent" rule favors his view that the antecedent of the limiting clause is the phrase immediately preceding it. While we do not appear to have employed this

15

rule in the past, it seems to be a close cousin of the well-established "rule of the last antecedent, according to which a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). Because the limiting clause here — "the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act" — more immediately follows "Federal criminal statute" than it does "violation of a Federal criminal statute," Davis argues that we must read "Federal criminal statute" as the antecedent of the limiting clause.

Although "the rule of the last antecedent is not an absolute and can assuredly be overcome by other indicia of meaning," *Lockhart v. United States*, 136 S. Ct. 958, 963 (2016), "the last antecedent rule generally applies absent" such a "contrary indication," *Lockhart*, 749 F.3d at 152. The government argues that the rule should not apply here at all for a reason discussed by the Supreme Court in *Cyan, Inc. v. Beaver County Employees Retirement Fund*, 138 S. Ct. 1061 (2018). In that case, the Court explained that the last antecedent rule is best applied where an alternative reading would "stretch the modifier too far by asking it to qualify a remote or otherwise disconnected phrase," but is less persuasive where "the modifier directly follows a concise and integrated clause." *Id.* at 1077. Applying

that lesson here, the government argues that, because the phrase "violation of a Federal criminal statute" is "concise and integrated," application of the "nearest reasonable referent" canon to the embedded term "Federal criminal statute" is inappropriate, even though the embedded term is nearer to the limiting clause.

Notably, however, the Court in *Cyan* also cautioned against applying the last antecedent rule opportunistically by "attaching the modifier to something more than the last thing before it." *Id.* Such caution is particularly warranted here, as the phrase nearest to the limiting clause, "Federal criminal statute," is also "concise and integrated." A reasonable reader is thus left searching for the "closest noun or noun phrase that the modifier could reasonably reference," *id.*, with two grammatically permissible choices.

In these circumstances, to label either phrase "concise and integrated" at the expense of the other would beg the very question the "nearest reasonable referent" canon is meant to answer: Which is the more *reasonable* referent of the limiting clause? Put differently, this is a case in which mechanical application of the "nearest reasonable referent" canon is less helpful than, and might even distort, the common-sense linguistic principles the canon is meant to embody.

Fortunately, other elementary principles of statutory interpretation are available to aid us in deciding which is the more reasonable referent of the limiting clause. According to a principle that sometimes goes by the name of the "anti-surplusage" canon, "[i]t is our duty to give effect, if possible, to every clause and word of a statute," *Duncan v. Walker*, 533 U.S. 167, 174 (2001), and we must therefore try to "avoid statutory interpretations that render provisions superfluous," *State St. Bank & Tr. Co. v. Salovaara*, 326 F.3d 130, 139 (2d Cir. 2003). Here, because Sections 2 and 3 of the Fair Sentencing Act affected only violations of "Federal criminal statute[s]," it is hard to see what purpose the phrase "Federal criminal statute" could serve, or why Congress would have placed it where it did, *except* to be the antecedent of the limiting clause. In other words, if "violation of a Federal criminal statute" were the antecedent of the limiting clause, then the meaning of Section 404(a) would be the same as if it read:

> [T]he term "covered offense" means a violation ~~of a Federal criminal statute~~, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act . . . , that was committed before August 3, 2010.

Reading "violation of a Federal criminal statute" as the antecedent would thus attribute no meaning to Congress's decision to include the words "of a Federal criminal statute" in the definition of "covered offense." The anti-surplusage

18

canon sensibly instructs us to avoid that reading if we can. By contrast, treating "Federal criminal statute" as the antecedent of the limiting clause gives effect to all of the words Congress used.[4]

Thus, as employed here, the combination of the "nearest reasonable referent" canon and the "anti-surplusage" canon embody a common-sense insight about the way Congress crafted the language of Section 404(a). Because the phrase "Federal criminal statute" merely restates descriptive information that is already supplied by the provision's focus on Sections 2 and 3 of the Fair Sentencing Act, the phrase would be superfluous if it did not independently contribute to the provision as a whole; faced with a choice between two

---

[4]    We are unpersuaded by the government's objection that this interpretation renders Congress's use of the word "statutory" redundant in the clause "the *statutory* penalties for which were modified by section 2 or 3 of the Fair Sentencing Act." According to the government, "there is no need to specify 'statutory' penalties if the referent [of the limiting clause] is 'Federal criminal statute.'" Reply Br. 9. But of course, both statutory and nonstatutory penalties — such as enhanced Sentencing Guidelines ranges — may follow from a conviction under a particular statute. Indeed, the Fair Sentencing Act spurred rapid conforming amendments to the Sentencing Guidelines, which included revisions "[t]o account for" Section 2's "statutory changes." 76 Fed. Reg. 24960, 24963 (May 3, 2011). Including the word "statutory" in the limiting clause removes any doubt that it is only the statutory penalties modified by Section 2 and 3, and not any Guidelines revisions that flowed from them, that are relevant to the definition of a "covered offense." *See Wirsing*, 943 F.3d at 186.

grammatically permissible options to serve as the "nearest" referent, that insight breaks the tie as to which is more "reasonable."

We therefore hold that the phrase "Federal criminal statute" is the antecedent of the limiting clause, "the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act."[5] That means that, under Section 404(a) of the First Step Act, if the statutory penalties associated with a particular "Federal criminal statute" were modified by Section 2 or 3 of the Fair Sentencing Act, then any defendant sentenced for violating that "Federal criminal statute" has been sentenced for a "covered offense." Section 404(a) thus delineates its coverage by reference to a category of statutory offenses for which defendants might be sentenced, not the virtually infinite set of specific actions that might give rise to those sentences. In other words, it is a defendant's statutory offense, not his or her "actual" conduct, that determines whether he has

---

[5]    In this Court's recent decision *United States v. Holloway*, some language in passing suggested that a defendant's eligibility turned on whether "he was sentenced for a particular 'violation of a Federal criminal statute,' and that the applicable statutory penalties for that violation were modified by the specified provisions of the Fair Sentencing Act." 956 F.3d at 664. In that case, because the question was immaterial to the holding, there was no occasion for a detailed inquiry into which phrase was the proper antecedent of the limiting clause "the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act" and the panel did not decide the question of the proper antecedent.  As discussed above, we hold today that "Federal criminal statute" is the antecedent of the limiting clause that immediately follows.

been sentenced for a "covered offense" within the meaning of Section 404(a), and is consequently eligible for relief under Section 404(b).[6]

This conclusion is buttressed by further evidence in the statutory text. The term "covered offense" is defined as a violation of a Federal criminal statute for which "the statutory penalties . . . *were modified* by section 2 or 3 of the Fair Sentencing Act." First Step Act § 404(a), 132 Stat. at 5222 (emphasis added). As noted above, Sections 2 and 3 of the Fair Sentencing Act did not apply to defendants like Davis who were sentenced prior to August 3, 2010, *see Dorsey*, 567 U.S. at 273, meaning that the penalties for those defendants' actual conduct were *not* modified by Section 2 or 3 of the Fair Sentencing Act. Accepting the

---

[6]     The government argues that, if Section 404 eligibility turns on whether a defendant was sentenced for violating a certain type of "Federal criminal statute," that would lead to the improbably broad result that any defendant sentenced for violating Section 841(a), or even the Controlled Substances Act, would be eligible, because those could be understood as "statutes" whose penalties were modified by Section 2 and 3 of the Fair Sentencing Act. But we think that Section 2 of the Fair Sentencing Act modified the statutory penalties for 21 U.S.C. § 841(b)(1)(A)(iii), and that Davis is therefore eligible because he was sentenced for a violation of that statute. That conclusion is consistent with the way courts describe the statutory offenses in this context, *see, e.g.*, *Bailey v. United States*, 568 U.S. 186, 191 (2013) ("Bailey was charged with . . . possession of [crack] cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii) . . . ."); *United States v. Lee*, 523 F.3d 104, 105 (2d Cir. 2008) ("Lee pleaded guilty . . . to one count of possession with intent to distribute fifty grams or more of cocaine base ('crack') in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii)."), and indeed, with Davis's own indictment, which characterized his crack cocaine conspiracy charge as a "violation of Title 21, United States Code, Sections 841(a)(1) . . . and 841(b)(1)(A); all in violation of Title 21, United States Code, Section 846." App'x 68.

21

government's "actual conduct" reading of Section 404(a) would thus imply that no defendant sentenced before the Fair Sentencing Act's effective date could be eligible for relief, rendering Section 404 a dead letter.

If Section 404(a)'s definition refers to a defendant's statutory offense, however, that paradox is avoided. For example, in this case Davis was convicted of and sentenced for violating Sections 846, 841(a)(1), and 841(b)(1)(A)(iii) of Title 21 of the United States Code. Section 2 of the Fair Sentencing Act modified the statutory penalties associated with a violation of those provisions by increasing Section 841(b)(1)(A)(iii)'s quantity threshold from 50 to 280 grams. Section 2 thus modified — in the past tense — the penalties for Davis's statutory offense, even though Davis was sentenced too early to benefit from the change.[7]

---

[7]    Our conclusion is unaffected by the manner in which the Fair Sentencing Act modified the statutory penalties associated with Davis's statutory offense: namely, by holding the penalty provisions of Section 841 constant and adjusting the threshold quantities of crack cocaine needed to trigger each penalty provision. The government suggests that "Section 2 [of the Fair Sentencing Act] did not modify any statutory penalties; rather, it modified the threshold quantities giving rise to the same, pre-existing penalties." Reply Br. 9–10. But that phrasing may have been the simplest way to legislate within the structure of Section 841, which begins with an omnibus prohibition on certain conduct related to controlled substances, *id.* § 841(a), mandates penalty ranges keyed to different threshold quantities of each substance, *id.* § 841(b)(1)(A), (b)(1)(B), and then lists the threshold quantity for each substance in separate subsections of Sections 841(b)(1)(A) and (b)(1)(B). Modifying the penalty ranges in Section 841(b)(1)(A) or Section 841(b)(1)(B) would have affected every controlled substance listed in either subsection, so one parsimonious way to single out crack cocaine offenses for the reforms Congress had in mind was to modify the

22

We therefore hold that Davis was sentenced for a "covered offense" within the meaning of Section 404(a). The government resists this conclusion by appealing to the purposes of Section 404, arguing that our interpretation will create unfair disparities among defendants depending on the timing of their sentence. To illustrate that argument, the government compares Davis to a defendant whose conduct also involved at least 1.5 kilograms of crack cocaine, but who was charged and convicted after the passage of the Fair Sentencing Act. Such a defendant would be subject to Section 841(b)(1)(A)'s heightened statutory penalties, the government argues, but would not be eligible now for any relief under Section 404. According to the government, "this approach generates a new disparity, granting earlier-sentenced defendants procedural relief unavailable to similarly situated, later-sentenced defendants." Appellant's Br. 20.

We find the government's argument unpersuasive for several reasons. First, the fact that our interpretation leaves some disparities in place is hardly an

---

threshold quantities listed in Sections 841(b)(1)(A)(iii) and 841(b)(1)(B)(iii). Moreover, the government's argument ignores the vernacular against which the First Step Act was enacted: for example, in promulgating its Guidelines revisions following the passage of the Fair Sentencing Act, the Sentencing Commission described Section 2 as having "reduced the statutory penalties for offenses involving manufacturing or trafficking in crack cocaine by increasing the quantity thresholds required to trigger a mandatory minimum term of imprisonment." 76 Fed. Reg. at 24963.

23

objection. The Fair Sentencing Act and First Step Act aimed to eliminate unwarranted sentencing disparities, to be sure, but not *all* sentencing disparities. For example, although it reduced the crack-powder disparity from 100-to-1, the Fair Sentencing Act left in place a disparity of approximately 18-to-1. Furthermore, if it is unfair to afford some pre-Fair Sentencing Act defendants a procedural opportunity that is unavailable to similar post-Fair Sentencing Act defendants, we doubt whether it would be consistent with the First Step Act's overarching purposes to solve that problem by "leveling down" — that is, by withholding the opportunity from everyone alike.

Second, the government's concern that this interpretation grants defendants like Davis an "unwarranted procedural windfall" is unconvincing. Reply Br. 20. The government's turn of phrase — "procedural windfall" — does not reflect the reality that many defendants who are eligible for Section 404 relief may receive no substantive relief at all. Section 404 relief is discretionary, after all, and a district judge may exercise that discretion to deny relief where appropriate. *See* First Step Act § 404(c), 132 Stat. at 5222; *Holloway*, 956 F.3d at 666. It is hardly surprising that Congress would prefer to extend such "procedural relief" broadly to ensure that *substantive* relief would be available

24

everywhere it is appropriate, safe in the knowledge that district courts would retain discretion to deny relief where it is not appropriate.[8]

Finally, and in any event, we see a more fundamental problem with the government's argument that Section 404 creates unfair disparities by withholding procedural relief from post-Fair Sentencing Act defendants while affording it to similarly situated pre-Fair Sentencing Act defendants. By definition, *all* post-Fair Sentencing Act defendants have received the procedural opportunity that Section 404 affords to pre-Fair Sentencing Act defendants, namely, the opportunity to be sentenced "as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect" at the time their offense was committed. First Step Act § 404(b), 132 Stat. at 5222.[9] According to the government, however, Davis's interpretation of Section 404 would create a problematic disparity between post-Fair Sentencing Act defendants sentenced under the Fair

---

[8]     For the same reason, we do not share the government's concern that, "[i]f every defendant sentenced under Section 841(b)(1)(A) is eligible for a discretionary sentence reduction, then even a defendant who pleaded guilty to an indictment charging more than 280 grams would be eligible." Reply Br. 21. Eligible, but hardly assured of relief, which would remain in the district court's discretion to grant or withhold.

[9]     To be precise, the post-Fair Sentencing Act defendants received a more robust procedural guarantee: they *must* be sentenced according to the Act's revised quantity thresholds, whereas those eligible for Section 404 relief "may" be, at the discretion of the sentencing court. First Step Act § 404(b), 132 Stat. at 5222.

Sentencing Act's heightened crack cocaine quantity thresholds and pre-Fair Sentencing Act defendants who would have received the same sentence regardless of the Fair Sentencing Act's intervening changes.[10]

Embedded in that concern is the assumption that there *is* a knowable set of pre-Fair Sentencing Act defendants who would have received the same sentence regardless of the Fair Sentencing Act. Indeed, the government has taken the position that Davis is such a defendant, arguing below that "it cannot be disputed that, if the Fair Sentencing Act was in effect at the time [Davis] committed his crime, the indictment would have alleged '280 grams or more of cocaine base' to trigger the penalties of § 841(b)(1)(A)." App'x 143.

Of course, that assumption *can* be disputed, in this case and others, because it is only an assumption. It would have been up to the grand jury, not

---

[10]    The government reports that it has sought to address this problem by "disput[ing] eligibility" under Section 404(a) "only in cases where the government established by at least a preponderance of the evidence, or the defendant admitted, quantities exceeding the Fair Sentencing Act thresholds." Reply Br. 20. The government admits, however, that "perhaps not all of these cases would have resulted in convictions under the Fair Sentencing Act's higher thresholds," even if "many of them would have." *Id.* at 20–21. Again, we find it perfectly consistent with the purposes of the First Step Act that Congress would have extended Section 404 *eligibility* to *all* defendants sentenced under Section 841(b)(1)'s pre-Fair Sentencing Act crack cocaine penalties, while relying on judicial discretion to solve the more complex and individualized problem of which such defendants should ultimately receive sentencing relief.

the government, to choose whether to indict Davis for an offense involving that amount. And it would have been up to Davis, not the government, to choose whether to plead guilty to such an offense, or whether to contest the indictment at trial. And finally, it would have been up to a jury — not the government — to decide whether the greater amount had been proved beyond a reasonable doubt. Only then would Section 841(b)(1)(A) have constrained the sentencing court to impose (at least) the penalty that Davis received. As those mounting assumptions illustrate, we cannot afford the government the hypothetical "do-over" it seeks. Even under a statutory regime designed to constrain courts' sentencing discretion, there is still more standing between a particular defendant and a particular sentence than the government's charging decision.

Thus, while we can understand the government's frustration that it could not have foreseen new, retroactive hurdles to come, it was Congress's decision to confer Section 404 eligibility broadly — and thereby to upset the government's *ex ante* expectations about what sentences certain defendants would serve. But Congress also gave district courts the discretion to deny sentencing reductions to eligible defendants where appropriate. Here, the government does not challenge the district court's exercise of discretion under Section 404(b). Therefore, and

because we agree with the district court that Davis was eligible to seek such relief, we affirm the district court's decision to grant it.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.