**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

DYMOND CHARLES BROWN,

     Defendant - Appellant.

No. 19-7039

_____

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 6:06-CR-00069-RAW-1)**
_____

Barry L. Derryberry, Assistant Federal Public Defender (and Julia L. O'Connell, Federal Public Defender of the Office of the Federal Public Defender, Northern and Eastern Districts of Oklahoma, with him on the briefs), Tulsa, Oklahoma, for Defendant - Appellant.

Linda A. Epperley, Assistant United States Attorney (Brian J. Kuester, United States Attorney, and Gregory D. Burris, Assistant United States Attorney, with her on the brief), Muskogee, Oklahoma, for Plaintiff - Appellee.
_____

Before **LUCERO**, **KELLY**, and **PHILLIPS**, Circuit Judges.
_____

**KELLY**, Circuit Judge.
_____

Defendant Dymond Brown appeals from an amended judgment reducing his

sentence pursuant to § 404 of the First Step Act of 2018, Pub. L. No. 115-391, 132

Stat. 5194, 5222.  At his original sentencing in 2007, the district court sentenced Mr. Brown as a career offender under the 2006 United States Sentencing Guidelines based on two predicate state convictions for crimes of violence: (1) feloniously pointing a firearm and (2) shooting with intent to kill.  See U.S. Sentencing Guidelines Manual § 4B1.2(a) (U.S. Sentencing Comm'n 2006).  The district court did not differentiate between the elements clause, U.S.S.G. § 4B1.2(a)(1), or the residual clause, U.S.S.G. § 4B1.2(a)(2), in holding that these two convictions were crimes of violence under the Guidelines.

Mr. Brown argues that at his First Step Act sentencing, the district court should have used the Guidelines in effect when Congress passed the First Step Act, that is, the 2018 Guidelines.  In addition, he argues that the district court should revisit his career offender status.  After Mr. Brown's conviction, we interpreted the Armed Career Criminal Act (ACCA) and held that the feloniously pointing a firearm is not a violent felony as defined by the ACCA because it did not necessarily have "as an element the use, attempted use, or threatened use of physical force against the person of another[.]"  See United States v. Titties, 852 F.3d 1257, 1272 (10th Cir. 2017) (quoting 18 U.S.C. § 924(e)(2)(B)).  The ACCA contains similar language to the elements clause of the 2006 Guideline definition of a crime of violence.  See U.S. Sentencing Guidelines Manual § 4B1.2(a)(1) (U.S. Sentencing Comm'n 2006).  Not surprisingly, Mr. Brown argues that the district court erred by not considering his challenge to his career offender status at his First Step Act sentencing on this basis.

2

The First Step Act empowers a court to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." § 404(b). This language is narrow and does not authorize plenary resentencing. But it allows a district court to at least consider Mr. Brown's claim that sentencing him as a career offender would be error given subsequent decisional law that clarifies (not amends) the related career offender provision at issue. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand for further proceedings consistent with this opinion.

**Background**

In 2007, Mr. Brown was sentenced after a jury found him guilty of possessing at least five grams of cocaine base with intent to distribute. The court determined that he was a career offender based on two prior Oklahoma convictions: feloniously pointing a firearm and shooting with intent to kill. 2 R. 5; 1 R. 33–34. As noted, the district court did not differentiate between the elements clause or residual clause in the Guidelines. The Guideline range under the 2006 Guidelines was 262 to 327 months' imprisonment, and the district court sentenced him to 262 months' imprisonment and four years of supervised release.

Though unaddressed, we note that in a prior 28 U.S.C. § 2255 motion, Mr. Brown challenged his career offender status on the basis that the ACCA's residual clause had been found unconstitutionally vague. United States v. Brown, 731 F. App'x 827 (10th Cir. 2018). That challenge was unsuccessful given that an incorrect

3

enhancement under the Guidelines' residual clause is not constitutional error. Beckles v. United States, 137 S. Ct. 886, 894 (2017). Thus, Mr. Brown's § 2255 motion and request for a COA failed because he could not establish the required constitutional error under 28 U.S.C. § 2253(c)(2). No doubt that this issue will be addressed on remand, but that is not the subject of the briefing in this case.

In 2019, Mr. Brown sought a reduced sentence under § 404 of the First Step Act. Concluding he was eligible for First Step Act relief, the district court calculated Mr. Brown's new Guideline range as 210 to 262 months' imprisonment. It rejected Mr. Brown's requests to reconsider his career offender enhancement, apply the current Guidelines, or vary downward from the Guideline range. The district court exercised its discretion to impose a reduced sentence of 210 months' imprisonment and three years of supervised release. Mr. Brown appeals.

On appeal, the parties agree that Mr. Brown is eligible for relief under § 404. They disagree, however, on the law that the sentencing court can consider when imposing a reduced sentence. Mr. Brown argues that the court should consider all the "standard sentencing law that Congress was aware of while passing the First Step Act." Aplt. Br. at 11. After Mr. Brown's initial sentencing, a divided panel of this court held that feloniously pointing a firearm under Oklahoma law is not a violent felony under the ACCA. Titties, 852 F.3d at 1268–69. Mr. Brown argues that holding means that he should not be treated as a career offender at his First Step Act sentencing and that this court should remand the issue to the district court. Aplt. Br. at 19. He also argues that the 2018 Guidelines rather than the 2006 Guidelines should be applied

4

when calculating his Guideline range. The government argues that when imposing a reduced sentence, the district court can only consider the law as it existed at the time of the original sentencing and §§ 2 and 3 of the Fair Sentencing Act. It insists that the First Step Act does not contemplate plenary resentencing.

A dramatic difference separates the Guideline ranges for which the parties advocate. The high end of the range Mr. Brown argues for is 63 months (just over five years) of imprisonment. The high end of the range determined by the district court and urged by the government is 262 months (nearly 22 years) of imprisonment. Mr. Brown, taken into custody for this offense on November 21, 2006, has already served nearly 14 years in prison for this conviction.

**Discussion**

A. Mr. Brown's Claim

Mr. Brown was sentenced in 2007 as a career offender, based in part on his previous state conviction of feloniously pointing a firearm. A decade later, in United States v. Titties, this court interpreted the state statute given the lens of the ACCA and held that feloniously pointing a firearm does not qualify as a violent felony because it "sweeps more broadly" than the ACCA definition. Titties, 852 F.3d at 1268–69, 1274

The elements clause in the definition of "violent felony" in the ACCA and the elements clause in the definition of "crime of violence" in the 2006 Guidelines are substantially the same. See 18 U.S.C. 924(e)(2)(B)(i) ("[T]he term 'violent felony'

5

means any crime punishable by imprisonment for a term exceeding one year . . . that— (i) has as an element the use, attempted use, or threatened use of physical force against the person of another[.]”); U.S. Sentencing Guidelines Manual § 4B1.2(a)(1) (U.S. Sentencing Comm'n 2006) (“The term ‘crime of violence’ means any offense under federal or state law punishable by imprisonment for a term exceeding one year that— (1) has as an element the use, attempted use, or threatened use of physical force against the person of another[.]”). The ACCA and the Guidelines also enumerate certain offenses that meet their respective definitions as well as include a conduct-based residual clause. See 18 U.S.C. 924(e)(2)(B)(ii); U.S. Sentencing Guidelines Manual § 4B1.2(a)(2) (U.S. Sentencing Comm'n 2006).

B. The First Step Act

We first consider the breadth of power Congress gave the sentencing court in § 404 of the First Step Act. We review the scope of a district court's authority de novo. United States v. Rhodes, 549 F.3d 833, 837 (10th Cir. 2008). Our primary task in interpreting a statute is “to determine congressional intent, using traditional tools of statutory construction.” St. Charles Inv. Co. v. Comm'r, 232 F.3d 773, 776 (10th Cir. 2000) (quotation omitted). As always, we begin our interpretation of the statute with the plain meaning of the text. See Sebelius v. Cloer, 569 U.S. 369, 376 (2013). Section 404, titled “Application of Fair Sentencing Act,” reads:

> (a) DEFINITION OF A COVERED OFFENSE.—In this section, the term “covered offense” means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of

2010 . . . . that was committed before August 3, 2010.

(b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed.

(c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 . . . or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

§ 404.  Section 2 of the Fair Sentencing Act increases the amounts of crack cocaine required to trigger mandatory minimum sentences for crack cocaine offenses; section 3 eliminates the mandatory minimum sentence for simple possession of cocaine.  Fair Sentencing Act of 2010, Pub. L. 111-220, §§ 2, 3, 124 Stat. 2372.  Although the Fair Sentencing Act was passed to remedy the 100:1 crack-to-powder cocaine sentencing disparity, its provisions applied only to those sentenced after its effective date, leaving those sentenced earlier with no relief.  See Dorsey v. United States, 567 U.S. 260, 268–69, 281 (2012); Alyssa L. Beaver, Note, Getting A Fix on Cocaine Sentencing Policy: Reforming the Sentencing Scheme of the Anti-Drug Abuse Act of 1986, 78 Fordham L. Rev. 2531, 2573 (2010).  In 2018, Congress enacted § 404 of the First Step Act to provide that relief.

Does this language authorize de novo resentencing or a more limited modification of a sentence?  Our sibling circuits have taken different positions.  On the one hand, because the First Step Act only references one other statute, the court can read it to permit imposing a reduced sentence based on "the relevant legal

7

landscape [altered] only by the changes mandated by the 2010 Fair Sentencing Act." United States v. Hegwood, 934 F.3d 414, 418 (5th Cir. 2019). On the other hand, the text of § 404(b) may authorize a broader resentencing — one that permits not only the retroactive application of §§ 2 and 3 of the Fair Sentencing Act, but also correction of other errors that affected a defendant's sentence. See, e.g., United States v. Chambers, 956 F.3d 667, 668 (4th Cir. 2020) (holding "that any Guidelines error deemed retroactive . . . must be corrected in a First Step Act resentencing"); United States v. Boulding, 960 F.3d 774, 776 (6th Cir. 2020) (holding that the First Step Act contemplates a baseline of process that must include an accurate amended guideline calculation and renewed consideration of the § 3553(a) factors).

To answer this question, we proceed to review the statute's structure, context, purpose, and history to discern congressional intent. See Gundy v. United States, 139 S. Ct. 2116, 2126 (2019); see also Jill C. Rafaloff, The Armed Career Criminal Act: Sentence Enhancement Statute or New Offense?, 56 Fordham L. Rev. 1085, 1091 (1988).

The structure of the Act provides little insight. Its title — "APPLICATION OF FAIR SENTENCING ACT" — suggests that the provision supports only retroactive application of the Fair Sentencing Act. But the plain text of the sentencing provisions gives the court discretion over whether to apply the Fair Sentencing Act at all. § 404(c). It does not provide guidance on what a court should consider in exercising its discretion or the scope of its analysis in exercising that discretion.[1]

---

[1] The dissent characterizes this language as "limit[ing] a sentence modification to that changed by sections 2 and 3 of the Fair Sentencing Act." Dissent at 6. It

Further, although the term "impose" is used in § 404(b), § 404(c) describes the relevant motion as one "to reduce a sentence." §§ 404(b), (c). This language can be interpreted as either authority for a de novo resentencing or for a more limited modification of a sentence. Congress has not guided our task by explicitly making other statutes relevant to the interpretation of § 404. Apart from making §§ 2 and 3 of the Fair Sentencing Act retroactively applicable, the text of § 404(b) — unlike many other provisions of the First Step Act — neither incorporates nor excludes other federal statutory provisions regarding sentencing.

We next consider how § 404 fits into the statutory context applicable to federal criminal sentencing in general. See Parker Drilling Mgmt. Servs., Ltd. v. Newton, 139 S. Ct. 1881, 1890 (2019) (holding it axiomatic that "Congress legislates against the backdrop of existing law") (quoting McQuiggin v. Perkins, 569 U.S. 383, 398 (2013)). Placing great emphasis on the authorization in § 404 to "impose" a reduced sentence, Mr. Brown argues that resentencing under § 404 requires application of "standard sentencing law that Congress was aware of while passing the First Step Act," including "the § 3553(a) sentencing factors, the current Sentencing Guidelines, and applicable case law." Aplt. Br. at 11. The government offers a more limited interpretation, arguing that

contends that the only thing that a district court may consider is the level of punishment based on the weight of crack cocaine. Id. at 2. This oversimplifies the issue. Sentencing is multifaceted; it is the result of a complex intersection of laws and factual circumstances that give legitimacy to punishment. The court has discretion over whether to impose a reduced sentence at all, which illustrates that imposing a reduced sentence is not merely a mechanical substitution of one number for another.

9

the express terms of § 404 authorize a resentencing based solely on the retroactive application of the Fair Sentencing Act. For Mr. Brown, the statute's use of the term "impose" mandates application of § 3553 and provides a free-standing resentencing authority not bound by the restrictions of 18 U.S.C. § 3582(c).

As part of the panoply of federal sentencing law, § 3582 provides an overarching policy of finality in federal sentencing and explicitly states that a "court may not modify a term of imprisonment once it has been imposed" absent certain exceptions. § 3582(c); see Dillon v. United States, 560 U.S. 817, 824 (2010). Making it even more relevant, § 3582(c) is specifically addressed to courts imposing terms of imprisonment, which is the focus of most § 404(b) motions. Section 3582(a) instructs: "[t]he court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable." § 3582(a) (emphasis added). Section 404 of the First Step Act explicitly states that no defendant is entitled to a reduction under the provision. See § 404(c). This reinforces our conclusion that § 404(b) did not demonstrate an intent to otherwise disturb the finality mandated by § 3582(c).

We recognize that the First Step Act itself can operate independently as statutory authority to modify a sentence of imprisonment, see, e.g., 18 U.S.C. §§ 2255, 3742(g), but such an interpretation leaves its operation unmoored from the entire body of statutory law that Congress has enacted to govern federal sentencing. Such an interpretation also fails to recognize the context in which the First Step Act was enacted and would fail to fulfill our obligation to "interpret the statute as a symmetrical and coherent regulatory

10

scheme, and fit, if possible, all parts into a[] harmonious whole." FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000) (citation and quotations omitted).

Thus, in light of our longstanding precedent on the overarching importance of § 3582(c)'s rule of finality and its limited exceptions in federal sentencing, we conclude that § 404(b)'s grant of discretionary authority to impose a reduced sentence must be accomplished through the statutory mechanism of § 3582(c)'s exceptions. This accords with the "ordinary practice" of federal sentencing: "to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." Dorsey, 567 U.S. at 280. It also fits with § 3582(c)(1)(B), the mechanism through which Congress empowered the First Step Act.

In this case, the applicable exception is § 3582(c)(1)(B), which authorizes modification "to the extent otherwise expressly permitted by statute . . . ." § 3582(c)(1)(B). Because we conclude that § 404(b) operates through the mechanism of § 3582(c)(1)(B), § 404(b) provides an exception to the rule of finality only "to the extent otherwise expressly permitted by statute." Id.


C. The Scope of the Court's Authority

Our review demonstrates that Congress, when passing § 404, authorized only a limited change in the sentences of defendants who had not already benefitted from the Fair Sentencing Act. Accordingly, plenary resentencing is not appropriate under the First

11

Step Act.[2]  The court can only make the Fair Sentencing Act retroactive and cannot consider new law.  It follows that the First Step Act also does not empower the sentencing court to rely on revised Guidelines instead of the Guidelines used at the original sentencing.[3]

In effecting that limited change contemplated by § 404, the court must calculate the defendant's Guideline range.  The starting point of any sentencing is a correct calculation of the applicable Guideline range.  See Gall v. United States, 552 U.S. 38, 49 (2007).  This is no easy task.  In addition to the results of the trial, sentencing turns on the judge's careful findings of fact and well-considered conclusions of law.  See, e.g., id. at 50 (holding that the judge must find specific facts at sentencing); United States v. Hamilton, 889 F.3d 688, 690 (10th Cir. 2018) (undertaking a legal analysis to determine if a sentence enhancement is appropriate); Titties, 852 F.3d at 1263–76 (same).

A miscalculation of the Guideline range affects the legitimacy of the process because "the benchmark for the entire sentencing process rests on an obviously mistaken premise."  United States v. Sabillon-Umana, 772 F.3d 1328, 1333–34 (10th Cir. 2014).

---

[2] The government contends that plenary resentencing is not appropriate. Aplee. Br. at 7.  We recognize that Mr. Brown's argument does not include a request for plenary resentencing.  See Aplt. Reply Br. at 2.  We reaffirmed the limited nature of sentence-modification procedures in United States v. Mannie, — F.3d —, — 2020 WL 4810084, at *8 (10th Cir. Aug. 18, 2020), but had no occasion to address whether a legal error may be corrected in such proceedings.  Given that the First Step Act operates through § 3582(c)(1)(B), resolution of the underlying legal issue in this case does not require an in-person hearing.  Fed. R. Crim. P. 43(b)(4).

[3] We note that the Guidelines are advisory, not mandatory.  United States v. Booker, 543 U.S. 220 (2005).  Nothing in this opinion prevents a sentencing court from exercising its discretion to vary from the Guideline range.

12

We have long recognized the importance of calculating the Guideline range correctly. See id.; United States v. Rosales-Miranda, 755 F.3d 1253, 1259 (10th Cir. 2014) ("[A] miscalculation in the Guidelines range runs the risk of affecting the ultimate sentence regardless of whether the court ultimately imposes a sentence within or outside that range.") (emphasis in original); United States v. Kristl, 437 F.3d 1050, 1053 (10th Cir. 2006) ("[T]he now-advisory Guidelines are [] a factor to be considered in imposing a sentence, which means that district courts 'must consult those Guidelines and take them into account when sentencing.'") (quoting Booker, 543 U.S. at 224); United States v. Smith, 919 F.2d 123, 124 (10th Cir. 1990) ("[B]asing a sentence on the wrong Guideline range constitutes a fundamental error affecting substantial rights."); see also Boulding, 960 F.3d at 776.

When the court calculates a defendant's Guideline range, it implicitly adopts the underlying legal conclusions. If Mr. Brown's sentence as a career offender was premised solely on the elements clause of the Guidelines,[4] U.S.S.G. § 4B1.2(a)(1), he would have a strong argument that it is premised on a legal conclusion that this court has rejected (that the Oklahoma crime "has as an element the use, attempted use, or threatened use of physical force against the person of another")." See Titties, 852 F.3d 1265, 1268; U.S. Sentencing Guidelines Manual § 4B1.2(a)(1) (U.S. Sentencing Comm'n 2006); 18 U.S.C. 924(e)(2)(B)(i). Our holding in Titties was not an amendment to the law between Mr. Brown's original sentencing and his First Step Act sentencing; it was a clarification of

---

[4] This issue can be explored on remand.

13

what the law always was.  See Titties, 852 F.3d at 1263–76; Rivers, 511 U.S. at 312–13 (1994).  The obvious similarity between the ACCA and the Guidelines elements clauses suggests that they mean the same thing.

If the district court erred in the first Guideline calculation, it is not obligated to err again.  See Sabillon-Umana, 772 F.3d at 1333–34 ("[W]hat reasonable citizen wouldn't bear a rightly diminished view of the judicial process and its integrity if courts refused to correct obvious errors of their own devise that threaten to require individuals to linger longer in federal prison than the law demands?  Especially when the cost of correction is so small?").

The dissent contends that we are expanding the First Step Act beyond what was intended.  It maintains that revisiting career offender status based upon intervening circuit law is radically different than imposing a sentence, particularly where the authority Mr. Brown relies upon did not exist in 2007.  The dissent dismisses the relevance of Titties on the basis that the Guidelines residual clause would apply.  The dissent's construction means that even if the Guidelines' residual clause had been invalidated, the court would have to ignore it.  Finally, the dissent contends that we are creating inequity given hypothetical defendants who might have been resentenced prior to our decision in Titties.

First, in imposing a First Step Act sentence, the district court is not required to ignore all decisional law subsequent to the initial sentencing.  In this case, the meaning of the Oklahoma statute has now been explored.  The district court can consider the import of that construction.  See Rivers, 511 U.S. at 313 n.12.  A correct Guideline range

14

calculation is paramount, and the district court can use all the resources available to it to make that calculation.

Second, at the initial sentencing, the district court did not articulate whether it considered Mr. Brown's Oklahoma conviction as a crime of violence based on the elements clause and/or the residual clause of the Guidelines. We cannot assume both would apply — as the dissent does — without more input; hence we must remand.

Third, our decision does not expand the First Step Act's narrow mandate or disregard the rule of finality. The First Step Act intentionally disrupts the rule of finality, and a remand to ensure that the underlying sentencing is consistent with the Guidelines on this narrow issue will vindicate the process. See United States v. Kirby, 74 U.S. 482, 486–87 (1868) ("All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence."); Chambers, 956 F.3d. at 671.

Fourth, the dissent argues that a hypothetical defendant sentenced under the Fair Sentencing Act before Titties might be worse off, assuming that Mr. Brown would prevail in his challenge.[5] That assumes that such a defendant exists and that Mr. Brown

---

[5] The dissent also suggests that a defendant might game the system, waiting years to bring a First Step Act challenge in the hopes of a decision suggesting error in a predicate crime-of-violence or controlled-substance offense used in the career-offender determination. Our level of cynicism given a defendant's incarceration and life span is not that great.

Likewise, the dissent questions whether the Fair Sentencing Act can be read to allow consideration of the § 3553(a) factors because other federal defendants might not receive the same reevaluation. Of course, this court has already determined that the § 3553(a) factors may be considered in a First Step Act proceeding while

15

will prevail. Be that as it may, we decline to read Congress's intent as directing a district court to impose a sentence possibly predicated on a legal error. "[W]e can think of few things that affect an individual's substantial rights or the public's perception of the fairness and integrity of the judicial process more than a reasonable probability that an individual will linger longer in prison than the law demands only because of an obvious judicial mistake." Sabillon-Umana, 772 F.3d at 1335. A correct application of our laws is paramount to the integrity of sentencing — and of the court itself. We agree with the Second Circuit when faced with a similar argument: "if it is unfair to afford some pre-Fair Sentencing Act defendants a procedural opportunity that is unavailable to similar post-Fair Sentencing Act defendants, we doubt whether it would be consistent with the First Step Act's overarching purposes to solve that problem by "leveling down" — that is, by withholding the opportunity from everyone alike." United States v. Johnson, 961 F.3d 181, 191–92 (2d Cir. 2020).

REMANDED. Upon remand, the district court shall consider Mr. Brown's challenge to his career offender status in accordance with this opinion.

---

agreeing that whether codified or not, courts have always been able to consider similar factors as a matter of common law and common sense. Mannie, 2020 WL 4810084 at *11 n.18.

No. 19-7039, *United States v. Brown*

**PHILLIPS**, J., dissenting

I would affirm Mr. Brown's reduced sentence based on the plain language of the First Step Act of 2018. Accordingly, I respectfully dissent.

In 2007, a jury convicted Mr. Brown of possessing with intent to distribute more than 5 grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) (2006).[1] His offense involved 20.76 grams of crack cocaine, the amount that fell from his pocket at the hospital where he was being treated for his reckless-driving injuries. In calculating Brown's sentence, the district court applied the career-offender guideline at the offense level applying to offenses with maximum sentences of at least 25 years but less than life.[2] *See* U.S.S.G. § 4B1.1(b)(B) (U.S. Sentencing Comm'n 2006).

In 2010, Congress enacted the Fair Sentencing Act, which reduced the sentencing disparity between powder and crack cocaine. Had this Act preceded Mr. Brown's 2007 sentencing, his underlying crime would instead have been set by 21 U.S.C. § 841(a)(1), (b)(1)(C) (2018), because it involved less than 28 grams of crack cocaine. That would have lowered the statutory maximum to 20 years' imprisonment, which in turn would have lowered the base offense level under U.S.S.G. § 4B1.1(b)(C) (2006) to 32, resulting in the low end of his advisory range falling from 262 months to 210 months. U.S.S.G. § 4B1.1(b) (2006); U.S.S.G., ch. 5, pt. A, Sentencing Table (U.S. Sentencing Comm'n

---

[1] The 2006 version of the United States Sentencing Guidelines applied.

[2] This conviction carried a five-to-forty-year term of imprisonment.

2006). But the Fair Sentencing Act did not apply retroactively, so, unlike post-2010 offenders, Brown could not take advantage of this legislative fix.

In 2018, responding to inequalities such as this, Congress passed the First Step Act. Among its important changes, the First Step Act applied the Fair Sentencing Act retroactively to "covered offense[s]" like Mr. Brown's. First Step Act of 2018, Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222. In this regard, the key portion of the First Step Act is found in Title VI—Sentencing Reform, and most particularly in subsection (b) of Section 404:

> (b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that *imposed* a sentence for a covered offense *may*, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, *impose* a reduced sentence *as if* sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) *were in effect at the time* the covered offense was committed.

*Id.* (emphasis added).

After enactment of the First Step Act, Mr. Brown petitioned the district court to exercise its discretion and impose a reduced sentence. The court did so after recalculating Mr. Brown's advisory Guidelines range "as if" the Fair Sentencing Act had been "in effect at the time the covered offense was committed."

But Mr. Brown wants more. In effect, he argues that the First Step Act gives crack-cocaine offenders like him (those sentenced before the Fair Sentencing Act) the benefit of all favorable sentencing developments accruing up to their First Step Act

sentencing.[3] Here, Mr. Brown seeks two benefits: (1) reconsideration of his career-offender status under U.S.S.G. § 4B1.1(a), in view of *United States v. Titties*, 852 F.3d 1257 (10th Cir. 2017), which held that Oklahoma's pointing-a-firearm felony no longer qualifies as a violent felony under the Armed Career Criminal Act (ACCA); and (2) reconsideration of his sentence under the 18 U.S.C. § 3553(a) factors.

I agree with the district court that the First Step Act provides Mr. Brown no such benefits. Instead, the First Step Act merely enables Brown to file a petition asking that the district court exercise its discretion to "impose a reduced sentence *as if* sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect *at the time the covered offense was committed*." First Step Act of 2018 § 404(b) (emphasis added) (citation omitted). This changes one variable at the second sentencing hearing—the amount of crack cocaine needed to support different levels of punishment. *See, e.g.*, *United States v. Kelley*, 962 F.3d 470, 475 (9th Cir. 2020). That variable alone levels the playing field for crack-cocaine defendants sentenced before the Fair Sentencing Act.

## I.      Career-Offender Status

The majority recognizes that federal courts have limited powers to resentence defendants. *See* 18 U.S.C. § 3582(b) (establishing that criminal sentences are final,

---

[3] This raises one of the problems with the majority's ruling. A petitioner sentenced on a crack-cocaine conviction before the Fair Sentencing Act of 2010 may strategically wait years to file his or her First Step Act petition, all while hoping for an intervening circuit court decision undoing a predicate crime-of-violence or controlled-substance offense used in the career-offender determination. I disagree with the majority that a defendant doing this would "game the system." Majority Op. at 15 n.5. Instead, the defendant would be sensibly availing himself of the rights the majority opinion affords him.

subject to a few narrow exceptions). I agree with the majority that one of these exceptions applies here—18 U.S.C. § 3582(c)(1)(B). Under that provision, a "court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure[.]" § 3582(c)(1)(B). That section directs that the needed authority to adjust a final sentence must come from the First Step Act itself. And as already noted, the First Step Act allows a sentence modification based on only one change: the level of punishment for a convicted offense's weight of crack cocaine. Nothing in the First Step Act gives courts authority to reconsider a defendant's career-offender status based on intervening circuit authority (and as explained below, none exists here anyway).[4] Accordingly, the majority takes matters into its own hands by enlarging the First Step Act beyond its terms, expanding this exception to the general rule of finality beyond what Congress intended. This approach is mistaken for several reasons.

First, redetermining career-offender statuses based on intervening circuit caselaw differs fundamentally from imposing a reduced sentence "as if" the Fair Sentencing Act was in effect when Mr. Brown committed his offense. At a bare minimum, the claimed intervening case did not exist when Mr. Brown was sentenced in 2007.

---

[4] As noted in *United States v. Mannie*, __ F.3d __, 2020 WL 4810084 (10th Cir. August 18, 2020), "the 'district court is authorized to modify a defendant's sentence only in specified instances where Congress has <u>expressly</u> granted the court jurisdiction to do so.'" *Id.* at *5 (quoting *United States v. Baker*, 769 F.3d 1196, 1198 (10th Cir. 2014)). Congress has not expressly granted the courts jurisdiction to redo defendants' career-offender designations under the Guidelines, doubly so by using intervening caselaw concerning the Armed Career Criminal Act, 18 U.S.C. § 924(e). As *Mannie* notes, "a 2018 FSA proceeding is not a resentencing." 2020 WL 4810084, at *9 n.15 (citing *United States v. Lucero*, 713 F.3d 1024, 1028 (10th Cir. 2013)).

4

Second, even if the First Step Act swept as broadly as the majority claims, the

majority has no intervening case on point. The majority identifies no published case in

which our circuit has ruled that the Oklahoma felony for pointing a firearm does not

qualify as a crime of violence under the residual clause at § 4B1.2(a) (2) (2006).[5] Instead

it relies on a case holding that this Oklahoma felony no longer qualifies as a violent

felony under the Armed Career Criminal Act, 18 U.S.C. § 924(e). *See Titties*, 852 F.3d at

1275, *overruling United States v. Hood*, 774 F.3d 638 (10th Cir. 2014). But even after

*Titties*, Mr. Brown's pointing-a-firearm conviction still counts as a § 4B1.2(a)(2) crime of

violence if it "otherwise involves conduct that presents a serious potential risk of physical

injury to another."[6] *See* § 4B1.2(a)(2) (2006). The reversal in *Titties* depended on whether

---

[5] On this point, Mr. Brown cites *United States v. Carey*, 689 F. App'x 627, 628 (10th Cir. 2017) (unpublished), a two-paragraph unpublished order vacating a defendant's felon-in-possession-of-explosives sentence on grounds that the district court had improperly enhanced it by treating the defendant's earlier Oklahoma pointing-a-firearm felony conviction as a Sentencing Guidelines crime of violence. The *Carey* court cited *Titties* as holding that "a conviction under this [Oklahoma] statute does not qualify as a crime of violence [violent felony] under the Armed Career Criminal Act." *Id.* The court observed that the violent-felony definition in the "intervening decision" of *Titties* "resembles that found in the sentencing guidelines." *Id.* Remarkably, the government had conceded that *Titties* controlled the Guidelines crime-of-violence issue. *Id.* But the *Carey* order failed to consider the operability and effect of § 4B1.2(a)(2)'s residual clause.

[6] Because the Supreme Court had stricken the Armed Career Criminal Act's (ACCA) residual clause as unconstitutionally vague, *see Johnson v. United States*, 576 U.S. 591, 606 (2015), *Titties* had no reason to consider a residual-clause-like provision in determining whether Oklahoma's feloniously-pointing-a-firearm crime was a violent felony. But under the Supreme Court's decision in *Beckles v. United States*, 137 S. Ct. 886, 892, 894 (2017), the Guidelines' similar residual clause survived a vagueness challenge. Accordingly, even if the majority were correct that *Titties* "was a clarification of what the law always was," for § 924(e)'s elements clause, majority opinion at 13, that case says nothing about whether the Oklahoma pointing-a-firearm felony satisfies the Guidelines' residual clause.

5

any of the means of committing the offense failed to meet § 924(e)'s element-of-physical-force clause (ruling that the means of pointing a firearm for purposes of "whimsy, humor or prank" did so fail). 852 F.3d at 1274. In contrast, the categorical approach for § 4B1.2(a)(2)'s residual clause requires that the court inquire "whether the conduct encompassed by the elements of the offense, *in the ordinary case*, presents a serious potential risk of injury to another." *United States v. Wray*, 776 F.3d 1182, 1185 (10th Cir. 2015) (emphasis added) (quoting *James v. United States*, 550 U.S. 192, 208 (2007)).

Third, even if our circuit had now issued an opinion holding that Oklahoma's pointing-a-firearm offense is not a crime of violence under § 4B1.2(a)(2)'s residual clause, the district court would still exceed the First Step Act's grant of sentencing authority by redetermining Mr. Brown's career-offender status under that decision— remember, the First Step Act limits a sentence modification to that changed by sections 2 and 3 of the Fair Sentencing Act. Recognizing this narrow authority to modify an otherwise final sentence, our sibling circuits have declined invitations to do just that. *See, e.g.*, *Kelley*, 962 F.3d at 474–75 (rejecting a First Step Act challenge to prisoner's earlier-made career-offender status based on intervening circuit authority holding that his two Washington-drug conspiracy convictions no longer qualify as predicate controlled-substance offenses under § 4B1.2(b)); *United States v. Hegwood*, 934 F.3d 414, 415, 418–19 (5th Cir. 2019) (rejecting a First Step Act challenge to prisoner's earlier-made career-offender status based on intervening circuit authority holding that predicate career-

6

offender drug offenses no longer qualified as controlled-substances offenses under § 4B1.1).[7]

Faced with this, the majority relies on *United States v. Chambers*, 956 F.3d 667, 668 (4th Cir. 2020), as holding that "any Guidelines error deemed retroactive . . . must be corrected in a First Step Act resentencing[.]" Majority Op. at 8. But the *Chambers* court's use of an intervening authority differs greatly from the majority's use of *Titties*. In *Chambers*, the court relied on an intervening case it had years before ordered be applied retroactively. 956 F.3d at 669 (citation omitted). In that earlier case, the court reversed its precedent that had allowed a defendant's felony drug conviction to qualify as a § 4B1.1(a) controlled-substance offense based on "hypothetical enhancement[s]." *Id.* Because this earlier case was ordered applied retroactively, the court declared that "the career-offender designation was just as much an error in 2005 as it was when we decided [the intervening case] in 2011." *Id.* (citation omitted). In contrast, our court has never applied *Titties* retroactively to resolve what qualifies as a violent felony under the Armed Career Criminal Act, let alone to resolve what qualifies as a crime of violence under the

---

[7] Nor have other circuits allowed district courts to undo career-offender determinations based on other changes in law apart from intervening circuit authority. *Cf. United States v. Hudson*, __ F.3d __, 2020 WL 4198333, at *5 (7th Cir. July 22, 2020) (concluding that the First Step Act does not entitle a prisoner to a resentencing on his career-offender status based on the Sentencing Guidelines no longer including residential burglary as a crime of violence under § 4B1.2(a)(2)); *United States v. Flowers*, 963 F.3d 492, 494–97, 499 (6th Cir. 2020) (concluding that the First Step Act does not entitle a prisoner to a resentencing on his career-offender status based on the Ohio legislature's amending the statute underlying his felony drug conviction in such a way that it no longer qualifies as a controlled-substance offense under § 4B1.2(b)).

unrelated residual-clause question under § 4B1.2(a)(2). So *Chambers* offers the majority no help.[8]

Fourth, in addition to exceeding the First Step Act's text, the majority necessarily ascribes to Congress an intent incongruous with that Act. As mentioned, the First Step Act seeks to cure inequalities between crack-cocaine defendants sentenced after the Fair Sentencing Act of 2010 and those sentenced before it.[9] But the majority opinion *creates* inequalities. Take for instance an identical crack-cocaine offender to Mr. Brown (drug weight and criminal history) who is sentenced after the Fair Sentencing Act but before our decision in *Titties*. That defendant could not contest his career-offender status as the

---

[8] In *Chambers*, the Fourth Circuit remanded for the district court to apply a retroactive intervening decision rendering an earlier felony no longer a § 4B1.2(a) crime of violence. As I understand the majority opinion, it does not say that *Titties* is retroactive, but instead says that *Titties* is what the law always was (despite *Titties* having overruled *Hood*). Again as I understand it, the majority then invites the district court to apply "the law as it always was" (*Titties*) to the crime-of-violence question if the district court believes *Titties extends* to § 4B1.2(a)(2)'s residual clause (remember, *Titties* addressed only the ACCA's elements clause). *See* Majority Op. at 3 (allowing the district court to reconsider Mr. Brown's pointing-a-firearm conviction as a crime-of-violence, this time using "subsequent decisional law that clarifies (not amends) the career-offender provision at issue"). But doing so calls for a redo based on something less than our court's reversal of the district court's original sentencing basis. Majority Op. at 3. No circuit has gone nearly so far.

[9] In *United States v. Mannie*, __ F.3d __, 2020 WL 4810084 (10th Cir. August 18, 2020), despite acknowledging that "neither the 2018 [First Step Act] nor § 3582(c)(1)(B) reference the 18 U.S.C. § 3553(a) factors," this court ruled that these factors "are permissible, although not required, considerations when ruling on a 2018 [First Step Act] motion." *Id*. at *11 n.18. I accept that this is binding authority, but I question what in the First Step Act's text allows defendants covered by the First Step Act the benefit of a reevaluation under § 3553(a) for post-conviction conduct when no other federal defendants get the same opportunity.

majority permits Mr. Brown to do. Under the majority's opinion, Mr. Brown is treated much better.[10] *See Kelley*, 962 F.3d at 478 (seeing "no indication in the statute that Congress intended this limited class of crack cocaine offenders to enjoy such a windfall").[11]

For these reasons, I would affirm.

---

[10] To accept the majority's view of Congressional intent, one would have to accept that Congress intended that a select group—pre-Fair Sentencing Act crack-cocaine defendants like Mr. Brown—can challenge their earlier career-offender designations but that defendants convicted for any other drug crimes cannot. So, for example, under the majority's new rule, a powder-cocaine (or any non-crack) defendant sentenced on the same day as Mr. Brown in 2007 with the same predicate career-offender convictions remains stuck with the career-offender sentence, left to watch on the sidelines as Mr. Brown goes forward with a retroactive career-offender redo. The majority does not even try to explain how this makes sense. Instead, it simply ignores this disparity after creating it.

[11] Addressing disparity, the majority cites *United States v. Johnson*, 961 F.3d 181 (2d Cir. 2020), a case that dealt with the "sole question" of whether a First Step Act petitioner "was originally sentenced for a 'covered offense' and is therefore eligible for relief under Section 404 of the First Step Act." *Id.* at 183. The court premised a defendant's eligibility on the underlying statute of conviction, not on actual conduct. *Id.* It rejected the government's argument that this ruling would create a disparity between crack-cocaine offenders sentenced before the Fair Sentencing Act of 2010 and those sentenced afterward. *Id.* at 191. In particular, *Johnson* noted that "[b]y definition, all post-Fair Sentencing Act defendants have received the procedural opportunity that Section 404 affords to pre-Fair Sentencing Act defendants, namely, the opportunity to be sentenced 'as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect' at the time their offense was committed." *Id.* at 192 (omission in original). I agree. And nothing in *Johnson* goes on to support the disparity caused by the majority's remand for a career-offender redetermination.